UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| In re SUBPOENA SERVED ON ) | |
| REGENT EDUCATION, INC. ) | |
| ) | Case No. 17-cv-03541-ELH |
| _____ ) | |
| ) | |
| CLINGMAN & HANGER ) | |
| MANAGEMENT ASSOCIATES, LLC ) | Related Case: |
| As Trustee, ) | Case No. 16-CV-62028-JAL-JG |
| ) | (S.D. Fla.) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DAVID KNOBEL, et al., ) | |
| ) | |
| Defendants ) | |

**THIRD-PARTY WITNESS REGENT EDUCATION, INC.'S CONSOLIDATED
(1) OPPOSITION TO MOTION OF DEFENDANTS TO COMPEL PRODUCTION; AND
(2) REGENT'S MOTION FOR ATTORNEYS' FEES AND EXPENSES FOR
ELECTRONIC DISCOVERY**

Third-Party Witness Regent Education, Inc. ("Regent"), through its undersigned counsel, submits this opposition to the motion of the Defendants to Compel Production of Documents.

In summary, the discovery difficulties brought to this Court's attention are those of the Defendants' own making:

(1) The underlining case was commenced in the Southern District of Florida in August 2016, yet the Defendants waited a year, until August 2017, to serve their subpoena upon Regent[1];

---

[11] Indeed, the Defendants' were dilatory in issuing their subpoenas for multiple third party custodians— **eleven** in fact; and sought an extension of discovery time from the Florida Court to mitigate its failure to act in a timely manner. (See Ex. A, Defendants' Response to Plaintiff's Motion to Modify Certain Pre-Trial Deadline and Statement of Good Cause at 5, filed in the Florida Court on October 17th, 2017.

(2) Regent has actively searched-for and produced the documents sought by the Defendants, but the materials are *massive* in quantity, the search requests are overbroad, and the necessary searches are extremely resource intensive.

(3) Regent does not keep its data in-house, but maintains them "in the cloud," that is, using off-site, third-party exchange servers, making the requested searches time consuming, expensive, and—in numerous cases—difficult due to compatibility issues between the exchange servers and the discovery tools used by Regent's eDiscovery vendor; the Defendant was made aware of all of this by Regent's vendor.

(4) The current tally of time spent by Regent's eDiscovery vendor is at approximately 250 hours (at the cost of between $125 and $250 per hour).

Regent has sought to cooperate with the Defendants on a *reasonable* basis and during a *reasonable* time frame—recognizing that it is not a party to this litigation.  However, Defendants' self-imposed deadlines due to its delay in serving its subpoena duces tecum, coupled with its overbroad and essentially abuse discovery requests to Regent, has made such cooperation difficult.

By the filing date of this Opposition, Regent expects that substantially all available eDiscovery material will have been produced to the Defendants, with the exception of student Personal Identifiable Information ("PII"), which has been culled-out from the other material produced.  The parties to this dispute previously agreed that Regent would produce this PII material subject to an agreeable protective order; however, to date, the Defendants have failed to even advise the Plaintiff's counsel in the underlying case concerning this agreement and this protective order—let alone involving them in the terms and drafting of this order.

Put simply, the Defendant is treating Regent as a party to the underlying litigation, and not as third-party witness. This is in contravention to Fed. R. Civ. P. 45(d), which requires that a party or attorney responsible for issuing or serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." This Rule goes further, providing that:

> The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply

The court is also authorized to impose appropriate limitations on discovery. Rule 26 provides that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Here, Regent seeks compensation for its eDiscovery expenses, as well as its attorneys' fees for the time expended in responding to the Defendant's motion to compel.[2]

## MEMORANDUM

As demonstrated by the accompanying declarations of Regent's attorney (Andrew Grosso) and its eDiscovery vendor, Mr. Douglas Armentrout, Regent—which is a *third party* to the underlying action—has not only sought to comply in good faith to the Defendants' subpoena *duces tecum*, but has expended considerable resources to do so. To-date, its email production comprises 24 "downloads" of material exceeding sixty-five gigabytes of data, all of which

---

[2] Regent notes that the Defendant's failure to abide by the applicable rules involves not only the Federal Rules of Civil Procedure but also the local rules of this Court. These local rules do not provide for service by email absent an agreement *in writing* by the parties, and the Defendants never served a copy of its motion to compel (or its motion to expedite briefing) by any other means that are allowed by the rules. Here, Regent's counsel had made no notice of appearance in this discovery dispute until the filing of this Opposition, and thus received no electronic notice as specified by L.R. 102(c); and counsel was never asked to agree, and thus never did agree, to service by email. In in order to expedite this dispute, Regent now waives this service requirement.

represents the results of searches that were conducted on a universe of data comprising of several *terabytes* of data—all done by remote computing, as Regent's practice is to store its data at an offsite Microsoft facility. As put by a sister Court, *Schaaf v. Smithkline Beecham Corp.*, 233 F.R.D. 451, 453 (quoting *Indent Ins. Co. of N Am. v. Am. Eurocopter LLC*, 227 F.R.D. 421, 426 (M.D.N.C. 2005)): "In the context of evaluating subpoenas issued to third parties, a court 'will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance.'" Put simply, the Defendants' discovery requests have been abusive, and their motion to compel is absurd.

    As explained in the accompanying declaration, Regent's counsel sought to explain to Defendants' counsel the magnitude of their requests; and at one point in time believed that the parties had come to an agreement on a reasonable scope of production. (Grosso Decl. ¶ 5.) Those materials were produced on October 17th; and additional, non-email material was produced on November 16th. But—the Defendants insisted on the full document search—a request with which Regent complied. However, even Regent underestimated the scope of the search requirements. Despite putting its eDiscovery vendor, Mr. Douglas Armentrout, directly in touch with Defendants' counsel, and with their eDiscovery Team (the "EDT Team"), search progress has proceeded deliberately for the reasons explained in Mr. Armentrout's declaration. On November 28th, Mr. Armentrout provided five "downlinks" data; and another two downlinks on November 29th. Despite this obvious and significant compliance with their overbroad request, the Defendants filed their motion to compel.

    Regent continues to produce documents, and as of today has produced 24 downlinks comprising some 65 gigabytes of data. In response, after being notified that Regent would seek compensation for its eDiscovery expenses and legal fees for responding to the document request,

the Defendants counsel filed a "supplemental affidavit," and then a second supplemental affidavit, seeking to justify its abuse conduct.

The multiple affidavits of Plaintiff's counsel contain several assertions that need to be put into context or otherwise corrected. These are:

(1) <u>Regent Is Late In Producing Documents:</u>  To the contrary, the subpoena served by the Defendants calls for document production *on the day of the deposition* of its corporate designee. *That deposition has not yet taken place*, and by agreement of the parties it has been moved to December 21st (a date suggested by Defendants).  Regent's document production is not late.

(2) <u>Regent Failed to Engage in the Drafting of a Proposed Protective Order:</u>  The parties agreed that the Defendants would draft a proposed protective order that would specifically address Regent's concerns over the disclosure of student PII material, inasmuch as the order already in place issued by the Court in the Southern District of Florida failed to accord appropriate protections for such material.  On November 22nd, Defendants' counsel sent an email to Regents' counsel attaching a proposed order.  (Notably, this was the day before Thanksgiving and while Regents' counsel was on travel for the holiday.)  The proposed order did nothing more than to mention student PII, *but added no additional protections*.  For this reason, Regent's counsel drafted a new proposed order, and distributed it to counsel for *both* parties in this litigation (doing so on December 4th and not on the 5th as asserted by Mr. Duval in his Second Supplemental Affidavit).   (Grosso Decl. ¶ 12.)

As a result of this exercise, Regent learned that Defendants' counsel never discussed a student PII protective order with Plaintiffs' counsel.  (See Grosso Decl. ¶ 12 and Ex. 9.) Obviously, without all parties to an action agreeing to and abiding by a protective agreement,


such an agreement would be an exercise in futility; and submitting a proposed protective order to the Court without the agreement of all parties would invite motion practice and delay.

However, this manner of conduct is apparently not unique for the Defendants: the Magistrate Judge in Florida observed with criticism their practice of refusing to produce documents obtained by rule 45 subpoenas from third parties to opposing counsel even when requested by Plaintiff's counsel to produce such documents. (Ex. B, S. D. Fla. Docket Sheet at 23-24, Dkt. Entry 140.)[3]  Apparently, the Defendants have chosen to transport one-sided litigation tactics from the Southern District of Florida to the forum of this Court.

As of the filing of this Opposition, undersigned counsel has received comments on the proposed draft order from the Plaintiff's counsel, but none from counsel for the Defendants.

(3) <u>Regent is Ignoring Its Discovery Obligations:</u> Regent is not ignoring its obligations: the problem is that the Defendants are ignoring their obligations under Rule 45 to avoid unduly burdensome discovery requests.  Regent is searching tens of terabytes of data, comprising 15 million emails—plus additional email attachments—all by remote means on a remote exchange server.[4]  (Decl. D. Armentrout.)  This takes time—and is expensive.  Regent asked the Defendants to narrow their search requests to no avail.  Regent is in the process of complying with those requests. A more detailed description of what Regent has done is found in Mr. Armentrout's declaration.  The original deadline found in the subpoena *duces tecum* was never achievable.  Initially, counsel for Regent believed in good-faith that a compromise regarding the

---

[3] See also Dkt. Entry No. 141, regarding Defendants' failure to confer with Plaintiff.

[4] The Defendants may complain about Regent's method of storing its data; however, that is not an issue for this dispute.  Regent is under no requirement to store material in a manner that makes eDiscovery production more or less achievable.  It is free to choose the method of storage that is most advantageous for its ongoing business needs.

search criteria had been reached (Grosso Decl. ¶ 5), but after receiving the materials so-culled, the Defendants insisted on full compliance.

Noteworthy is that, when seeking a three month extension of time for the discovery deadline in the Florida case, the Defendants complained of their own problems in searching through a mere one terabyte of data obtained from a different third party.  The Defendants complained to the Florida Court that (bold in original):

> The production from IEC thus far is already very substantial. IEC has already made available hundreds of thousands of emails and attachments, and also has in its possession additional network files amounting to more than a **terabyte** worth of data. Review of this material in advance of depositions may take as much as four weeks (or more) to review.

(Ex. A, Motion at 7.)  Regent is not a party to this case, cannot be forced to bear the same burden and expense of review, plus production, as if it were.

This discovery dispute arises from a problem of the Defendants' own making.

(4) <u>Regent Ignored a "Hard Deadline" of November 14th</u>:  This "hard deadline" was agreed-upon when the fact discovery cut-off date in the Florida case was December 1, 2017 (Ex. A, Motion at 2); and was expressly contemplated to be part of a rolling production.  By order dated October 23, 2017, the Florida Court extended the deadline to January 3, 2013. (Ex. B, Dkt. Entry 126.)  Instead of November 14th, Regent produced some material on November 16th, in addition to the material previously produced on October 17th.  As further explained by Mr. Armentrout in his declaration, Regent, despite its good faith efforts, was unable to satisfy the November 14th date and—given the change of discovery cut-off in the Florida case, this date was no longer critical.

(5) <u>Regent Served Its Objections Late:</u>  This is incorrect.  The deadline for filing objections is the earlier of the time specified for compliance or 14 days after the subpoena is

served. Fed. R. Civ. P. 45(d)(2)(B).   The objections were served on November 10th.  By agreement, the parties had extended the time for formal compliance with the subpoena, as of November 10th, to November 29th.  They have again extended it to December 21st, and it has not yet occurred.   (By its terms, the subpoena served upon Regent does not require compliance until the date of the deposition of Regent's corporate designee.)

As a practical matter, this contention is moot as Regent is not relying upon these objections for withholding documents, except for two objections:

(1) that concerning the student PII material that is covered by FERPA, pending the entry of an appropriate protective order by this Court; and

(2) that concerning the overbroad and unduly burdensome nature of the scope of the document demand.

Regent does reserve the right to exercise it claw-back rights under the Federal Rules.

(6) <u>No Documents for the Designated Corporate Witness Chuck Lang Have Been Produced</u>:  Attached as Exhibit C is an email, dated December 7, 2017, from Mr. Armentrout to the Defendants' eDiscovery Team providing the documents for Mr. Lang.

### REQUEST FOR PROTECTIVE ORDER

As of this date, Regent has produced 55% of the person-year compilation of emails requested by the Defendants, including 24 of 28 such items identified by the Defendants as "priority."

Pursuant to Fed. R. Civ. P. 26(c)(1), Regent asks this Court for a protective order excusing it from further efforts in responding to the search and production called for by the

defendants subpoena duces tecum until and unless the Defendants make payment for Mr. Armentrout's fees, both prospective and those already incurred.

## CONCLUSION

For the reasons set forth above and in the accompanying declarations, the Defendants' Motion to Compel must be denied.

Given the scope of the Defendants' requests, Regent asks this Court to award to it eDiscovery expenses and legal fees for responding to this motion, in amounts to be determined.

Respectfully Submitted,

/S/Andrew Grosso
Andrew Grosso (D.C. Bar No. 358326)
ANDREW GROSSO & ASSOCIATES
1101 Thirtieth Street, NW, Suite 300
Washington, D.C. 20007
Telephone: (202) 298-6500
Email: agrosso@acm.org

## CERTIFICATION

I hereby certify that I have by email on November 30th notified Mr. Kenneth Duvall, counsel for the Defendants, that Regent intended to ask this court for attorneys' fees for responding to this motion; and on December 6th I notified Mr. Duvall that Regent intended to ask for Mr. Armentrout's expenses. Mr. Duvall did not respond to either statement.

  /s/   Andrew Grosso
         Andrew Grosso, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2017, the foregoing was served by the Court's Electronic Filing System to all counsel of record in this matter in the District of Maryland; and by U.S. Mail, First Class upon the following counsel for the Plaintiff in the underlying action in the Southern District of Florida:

> Bijan Amini, Esq.
> Avery Samet, Esq.
> Cara Schmidt, Esq.
> STORCH AMINI PC
> 2 Grand Central Tower
> 140 East 45th Street, 25th Floor
> New York, New York 10017

    /s/ Andrew Grosso_____
        Andrew Grosso, Esq.